OREGON MESABI CORPORATION v. C. D. JOHNSON LUMBER CORPORATION.

No. 11569.

Circuit Court of Appeals, Ninth Circuit.

Dec. 12, 1947.

Laing, Gray & Smith, Henry S. Gray, and John R. Becker, all of Portland, Or., for appellant.

King & Wood, Robert S. Miller, and Edward E. Grant, all of Portland, Or., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, hereinafter called Mesabi, appeals from a judgment of the district court condemning a right of way for a logging road over appellant's timber land to timber land of appellee, hereinafter called Johnson, enclosed on three sides by Mesabi's lands. The judgment was for an exclusive easement providing that the described road "be and the same hereby is condemned and

appropriated to the plaintiff [Johnson] as a right of way for a logging road, and said lands are appropriated to and vested in the said plaintiff as an unlimited easement with the right to the exclusive use thereof, subject to the right of the defendant, Oregon Mesabi Corporation, to make such necessary crossings of said right of way as will not unreasonably interfere with the use of said right of way by plaintiff; * * * "

■ The litigation was commenced in the circuit court of Oregon for Lincoln County. Johnson's complaint stated it to be a Nevada corporation and Mesabi an Oregon corporation. Mesabi filed its verified petition for removal on ground of diversity of citizenship, alleging it to be the defendant and that it is a Delaware corporation. The removal was ordered. Having thus succeeded in securing the removal, Mesabi appeared generally in the district court in a demurrer to the complaint. Thereafter an amended complaint was filed alleging Mesabi to be a Delaware corporation. The jurisdiction was thereby established under the provisions of Section 274 c of the Judicial Code, 28 U.S.C.A. § 399. Mesabi then sought a remand because the complaint on its face did not warrant removal. That is to say, having sworn in the state court that it is the defendant and is a Delaware corporation, it sought remand on the ground that it is not the defendant and that the defendant is someone else, an Oregon corporation. We agree with the district judge's colloquial statement that this is "hocus pocus."

Johnson sought condemnation under the provisions of the Oregon constitution and statutes giving to timber land owners and others access to their lands over adjoining lands. The Oregon constitution in Article I, § 18, as amended in 1924, provides that:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use or drainage is nec-essary to the development and welfare of the state and is declared a public use."

Implementing this constitutional provision, Title 12, Chapter 2, O.C.L.A. § 12-202 provides that "any" person or "corporation" who shall require land for the transportation of raw productions of the forest and is unable to agree for a purchase with the owner "shall have the right to condemn so much of the land necessary for such logging railroad, road or ways as may be necessary for the use of such way, road or logging railway, and may maintain a suit for the condemnation thereof in the circuit court of the county wherein said lands are located; provided, that no land shall be taken hereunder until compensation therefor has been assessed and tendered as herein provided."

The Oregon supreme court has upheld such legislation as a proper exercise of eminent domain in Coos Bay Logging Co. v. Barclay, 1938, 159 Or. 272, 292, 79 P.2d 672, and Barkley v. Gibbs, Or., 1947, 178 P.2d 918. We have held constitutional similar legislation of the State of Washington for condemning a private logging road in Ruddock v. Bloedel Donovan Lumber Mills, 9 Cir., 1928, 28 F.2d 684.

■ Mesabi contends that the phrase "any * * * corporation" so having the power of eminent domain does not include foreign corporations such as Johnson. We do not agree. To hold with Mesabi would mean that this constitutional provision and this statute intend to deny the utilization of the millions of dollars of investors of other states in the costly provision for logging machinery, tractors, trucks, truck roads and railroads giving to Oregon labor its largest source of income and, incidentally, one of the state's largest sources of taxation.

The Oregon supreme court has held the contrary with respect to a similar statute respecting condemnation for telephone lines. Northwestern Electric Co. v. Zimmerman, 67 Or. 150, 152, 135 P. 330, Ann. Cas. 1915C, 927. The principle there established applies here. Cf. § 77-318, O.C.L.A. providing that the Oregon corporation law shall be construed "so as to give to foreign corporations the same rights, powers, and privileges, on a compliance with the laws

of this state, as may be acquired or exercised by corporations incorporated under the laws of this state."

■ Mesabi demurred to the complaint on the ground that it does not allege that Johnson had filed with the county clerk a statement of the "approximate route" of the proposed logging road as provided under § 12-201, O.C.L.A.[1] That statute uses the permissive words "may file" and is for the purpose of giving admission to the lands for the purpose of making an accurate survey. We agree with the district court that the demurrer was properly overruled.

■. In this connection, it was later contended that the filing with the county clerk showed a description of the "approximate route" differing somewhat from that described in the complaint and hence the procedure is invalid. We have held to the contrary of a similar contention in Eastern Oregon Land Co. v. Willow River Land & Irrigation Co., 9 Cir., 1913, 204 F. 516, 524, certiorari denied 234 U.S. 761, 34 S.Ct. 777, 58 L.Ed. 1581. The same conclusion was reached in In re Willow Creek, 74 Or. 592, 632, 144 P. 505, 146 P. 475.

■ Nor is there merit in Mesabi's contention that the complaint should show the evidentiary facts why the land sought is "reasonably necessary" for the road. The statement that the land is "reasonably necessary" for the road is an allegation of ultimate fact and we agree with Judge Cavanah's decision in Flora Logging Co. v. Boeing, D.C., D.Or., 1930, 43 F.2d 145, 148, that the allegation is sufficient. Cf. Dallas v. Hallock, 44 Or. 246, 252, 75 P. 204, and Sullivan v. Cline, 33 Or. 260, 54 P. 154.

The timber of the parties grows in the watershed of Euchre Creek in Lincoln County, Oregon. That stream there flows from northerly to southerly. Johnson's timber· lies to the northerly and it seeks to transport its logs southerly on a down grade road on or near the creek bottom through Mesabi's timber, enroute to the town of Toledo, where it has its sawmill. Section 12-202, O.C.L.A., permits the condemnor to acquire land necessary for a "logging railroad, road or ways."

■ What the complaint asked for was a right of way for such a logging road. It alleges in paragraph V that "plaintiff requires the following land situated in Lincoln County, Oregon, as a right of way for a logging road: * * *" and later, in paragraph VII, that "Plaintiff in this action seeks to condemn and acquire the property described in paragraph V for public use, to-wit, for a logging road and to promote the transportation of logs and raw products of the forest. That said lands are reasonably necessary for said purpose."

We construe this language as seeking no more than a right of way over Mesabi's land and agree with the trial court in its exclusion of evidence on damages, here claimed as error, offered by Mesabi on the theory that what Johnson sought was a qualified fee.

■ However it is apparent that the right of way sought might be an exclusive one over which Mesabi could not transport its timber. Or, it might be such a right of way as is usual over another's land where the owner may use it as he desires so long as he does not interfere with the use of the possessor of the right of way. In preparation for the trial as to damages,

[1] "§ 12-201. Filing statement of route and bond: Right of entry. Any person, firm or corporation who shall require land for transportation of the raw products of the forest may file with the county clerk of the county in which said land is located a statement showing the approximate route of any proposed road or railway and a general description of the tract which said road or railway may travel, and at the same time may file with the clerk of said county a bond in such sum as may be fixed by order of the county court, conditioned upon the payment to the owner or owners of the lands required for said road or railway, of any and all damage which the owners may sustain by reason of entry upon said land for the survey or location of said road or way. When said bond has been filed, such person, firm or corporation shall have the right to enter upon said tract for the purpose of examining, locating or surveying the line of such road or logging railroad."

the amount the jury might award well could vary greatly as between an exclusive and an ordinary right of way. Also on the issue of necessity, the question arises whether it is "reasonably necessary" for Johnson to have an exclusive rather than an ordinary right of way through Mesabi's land.

In this situation we think the trial court should have exercised its discretion in favor of granting Mesabi's motion under the Oregon law, which both parties agree is here applicable, that the complaint should be made more certain in that it "should specify the rights sought to be appropriated, with convenient certainty, as required by Oregon Laws, 1945, Chapter 168." In this connection we are aware of the discussion in Pacific Live Stock Co. v. Warm Springs Irrigation District, 9 Cir., 270 F. 555, but believe that in the relations of the two timber owners here shown it is clearly advantageous to the parties in the preparation of the evidence for the trial that the nature of the right sought should be definitely stated.

■ Mesabi also contends that by a denial on information and belief it raised the issue whether Johnson, a foreign corporation, had qualified for the transaction of business in Oregon and that Johnson had failed to prove the filing of the power of attorney with the Oregon Corporation Commissioner required by § 77-301, O.C. L.A. Where, as here, the inspection of the Commissioner's public records would disclose whether the filing had been made, its existence cannot be put in issue by a denial on information and belief. Kernin v. City of Coquille, 143 Or. 127, 136, 21 P.2d 1078; Cockerham v. Potts, 143 Or. 80, 87, 20 P. 2d 423.

The parties agreed that the issue of reasonable necessity should be tried to the court. The court found such necessity on ample evidence. Any route other than down through Mesabi's timber would not only be much more costly to construct but its adverse grades would greatly increase the transportation cost and slow its volume—an unnecessary addition to the cost of lumber to the Oregon builders of homes, farm housing and other wooden structures and also an impairment of the competitive price position of such Oregon lumber sold in the lumber markets of other states.

■ However, the district court made no finding as to whether the reasonably necessary right of way should be exclusive or ordinary, though in its judgment it gives to Johnson an exclusive right of way. This is despite the fact that one of Johnson's witnesses based his estimate of damages to Mesabi on the assumption "that the user permit the landowner whose land is traversed by a right-of-way to use the right-of-way in removing his own timber." Since it well may be that such an exclusive right of way is not a reasonable necessity for the moving of Johnson's logs through Mesabi's timber lands and since the damages to Mesabi well may be lessened if in moving its logs cut on each side of the road, it may use the road, this issue should be determined on the new trial which we order on this issue and that of damages.

■ The major contention on the merits is, what Johnson should pay for what it takes from Mesabi and what detriment the taking causes Mesabi in increased cost of logging the latter's timber and in fire risk to it from Johnson's loggers and logging trucks and their drivers, and the inevitable hunters, fishermen and campers who invade the forest when a logging road gives access to them and their pack animals.

With regard to increased fire hazard Mesabi contends that one of the court's instructions respecting damage could be interpreted as requiring to recover for added fire risk proof that fire "will probably and with reasonable certainty follow the taking of rights of way." No doubt the court will make it clear that it is the hazard of fire not the reasonable certainty of its occurrence which is the damage which must be compensated.

The complaint's description is for a road sixty feet wide and over a mile long and its forty-five calls and distances show the rough and irregular character of the creek bottom. It is reasonable to suppose that the route sought to be taken is the most feasible for a truck road. If Mesabi de-

sires to build a logging railroad in the water route of the creek bottom, Johnson's right of way may make it more costly or, indeed, make its construction impossible. If Johnson's right of way be exclusive, the cost to Mesabi of a truck road on a less feasible route would be more costly—that is if any other truck road there can be constructed.

Mesabi also well could show as one of the other elements of damage that the economic method of taking its timber would be to fall, buck and pile its timber growing on both sides of the proposed road, without any interference of any road, postponing building its own road until this more economic method was completed. The presence of Johnson's exclusive road so bisecting Mesabi's timber would require the added cost of lifting many logs across the road. If the road were to be used by both parties there would be a different amount of damage.

In this situation the exact position of the proposed road with its forty-five changes of direction in its route down the creek bottom in its standing timber is essential in determining such damages. At the trial Johnson offered no evidence of the right of way to be taken other than a survey and field notes of but one surveyor. This surveyor was not offered as a witness, though Mesabi demanded his production. The Oregon law does not permit the introduction of such a survey. Section 87-306 provides:

"§ 87-306. Evidentiary effect of surveys: Requisites of unofficial surveys: Exceptions: Construction of section. No surveys or resurveys hereafter made by any persons, except the county surveyor or his deputy, unless attested by two competent surveyors, shall be considered legal evidence in any court within the state, except such surveys as are made by the authority of the United States, the state of Oregon, or by mutual consent of the parties. This section shall not be construed to prevent a surveyor other than the county surveyor from testifying to a survey made by him of property in controversy, which survey was not attested or not made by mutual consent of the parties."

Mesabi's objection to the admission of this survey should have been sustained. Evidence that the surveyor who made the survey was directed to make it by another employee of Johnson who was a surveyor, but who was not present when the survey was made, does not make such a directing person a surveyor within the meaning of the statute.

Certain stakes were shown to be in the creek bottom but no one testified that they corresponded with the road sought to be condemned. Nevertheless Johnson offered evidence concerning Mesabi's damages based upon the route shown by the stakes. In such absence of any evidence by the condemnor of the location of the right of way sought to be condemned, Mesabi was not in a position to give to the jury evidence of how the logging of the surrounding timber would be affected. A reversal and new trial are required.

It is unnecessary to consider other contentions of error with regard to the rulings on evidence and instructions to the jury since they well may not be pertinent to the reframed issues on the new trial.

The judgment is reversed.